UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REGINALD BROWN,<br><br>        Plaintiff,<br><br>  -against-<br><br>VICI PROPERTIES, INC., JAMES R. ABRAHAMSON, DIANA CANTOR, MONICA HOWARD DOUGLAS, ELIZABETH I. HOLLAND, CRAIG MACNAB, EDWARD D. PITONIAK and MICHAEL D. RUMBOLZ,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Reginald Brown ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against VICI Properties, Inc. ("VICI" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with VICI, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of MGM Growth Properties, LLC ("MGP") by VICI (the "Proposed Merger").

2. On August 4, 2021, VICI, MGP and MGP's controlling stockholder, MGM Resorts International ("MGM") entered into a Master Transaction Agreement (the "Master Transaction Agreement"), pursuant to which VICI's subsidiary, Venus Sub LLC ("REIT Merger Sub") will

1

merger with and into MGP in exchange for 1.366 shares of VICI Common Stock for each outstanding Class A commons stock of MGP ("Merger Consideration"), with REIT Merger Sub continuing as the surviving entity. Thereafter, REIT Merger Sub will merge with and into MGM Growth Properties Operating Partnership LP ("MGP OP"), a wholly owned subsidiary of MGP, with MGP OP surviving as a wholly owned subsidiary of VICI. As the controlling stockholder of MGP, MGM will receive $43.00 per unit for the redemption of the majority of its MGP Operating Partnership units ("OP Units") that it holds for total cash consideration of approximately $4.4 billion, and will also retain approximately 12 million units in the newly formed operating partnership resulting from the Proposed Merger, VICI Properties OP LLC. The approximate total value of the Proposed Merger is $17.2 billion. The continuing VICI stockholders are expected to own approximately 78% of the common stock of the Combined Company, and the former MGP shareholders are expected to own the remaining 22%.

3. On September 23, 2021, in order to convince VICI shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading Prospectus on Form 424B3 (the "Prospectus") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Prospectus contains materially incomplete and misleading information concerning: (i) financial projections for VICI and MGP; (ii) the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion; and (iii) potential conflicts of interest faced by Morgan Stanley.

5. The Proposed Merger is expected to close in the first half of 2022 and the special meeting of VICI shareholders to vote on the Proposed Merger (the "Shareholder Vote") is scheduled for October 29, 2021. Therefore, it is imperative that the material information that has

been omitted from the Prospectus is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to VICI shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C.

§ 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, VICI is headquartered is this District and its common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. Further, VICI hired Morgan Stanley as a financial advisor which is located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, MGP's common stock also trades on the NYSE and the combined company's common stock will continue to trade on the NYSE, further rendering venue in this District appropriate.

**PARTIES**

10. Plaintiff is, and at all relevant times has been, a holder of VICI common stock.

11. Defendant VICI is a Maryland corporation, with its principal executive offices located at 535 Madison Avenue, 20th Floor, New York, New York 10022. The Company is an experiential real estate investment trust focused on gaming, hospitality and entertainment properties. VICI's common stock trades on the NYSE under the ticker symbol "VICI."

12. Individual Defendant Edward D. Pitoniak is, and has been at all relevant times, Chief Executive Officer and a director of VICI.

13. Individual Defendant James R. Abrahamson is, and has been at all relevant times, Chairman of the Board of VICI.

14. Individual Defendant Diana Cantor is, and has been at all relevant times, a director of VICI.

15. Individual Defendant Monica Howard Douglas is, and has been at all relevant times, a director of VICI.

16. Individual Defendant Elizabeth I. Holland is, and has been at all relevant times, a director of VICI.

17. Individual Defendant Craig Macnab is, and has been at all relevant times, a director of VICI.

18. Individual Defendant Michael D. Rumbolz is, and has been at all relevant times, a director of VICI.

19. The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with VICI, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.  Background and the Proposed Merger**

20. VICI is a Maryland corporation that is primarily engaged in the business of owning and acquiring gaming, hospitality and entertainment destinations, subject to long-term triple net leases. VICI's national, geographically diverse real estate portfolio currently consists of 28 market-leading properties, including Caesars Palace Las Vegas and Harrah's Las Vegas, two of the most iconic entertainment facilities on the Las Vegas Strip. VICI's entertainment facilities are leased to leading brands that seek to drive consumer loyalty and value with guests through superior services, experiences, products and continuous innovation. Across over 47 million square feet, VICI's well-maintained properties are currently located across urban, destination and drive-to markets in twelve states, contain approximately 17,800 hotel rooms and feature over 200 restaurants, bars and nightclubs. VICI conducts its operations as a REIT for U.S. federal income tax purposes.

21. MGP is a Delaware limited liability company that is primarily engaged in the business of owning, acquiring, leasing and investing in large-scale destination entertainment and leisure properties, whose tenants generally offer casino gaming, hotel, convention, dining, entertainment and retail and other amenities. MGP's real estate portfolio, including properties owned by the joint venture with Blackstone Real Estate Income Trust, Inc. (the "BREIT JV"),

5

includes seven large-scale entertainment and gaming-related properties located on the Las Vegas Strip: Mandalay Bay, MGM Grand Las Vegas, The Mirage, Park MGM, New York-New York, Luxor and Excalibur, and The Park, a dining and entertainment district located between New York-New York and Park MGM. Outside of Las Vegas, MGP also own five market-leading casino resort properties: MGM Grand Detroit in Detroit, Michigan, Beau Rivage and Gold Strike Tunica, both of which are located in Mississippi, Borgata in Atlantic City, New Jersey, and MGM National Harbor in Prince George's County, Maryland. MGP also owns MGM Northfield Park in Northfield, Ohio and Empire City in Yonkers, New York.

22. On August 4, 2021, VICI, MGP, and MGM issued a joint press release announcing the Proposed Merger, which states in relevant part:

### VICI Properties Inc. Announces $17.2 Billion Strategic Acquisition of MGM Growth Properties LLC

NEW YORK & LAS VEGAS--(BUSINESS WIRE)--VICI Properties Inc. (NYSE: VICI) ("VICI Properties" or "VICI"), MGM Growth Properties LLC (NYSE: MGP) ("MGP") and MGM Resorts International (NYSE: MGM) ("MGM Resorts"), MGP's controlling shareholder, announced today that they have entered into a definitive agreement (the "Master Transaction Agreement") pursuant to which VICI Properties will acquire MGP for total consideration of $17.2 billion, inclusive of the assumption of approximately $5.7 billion of debt. Upon completion of the merger, VICI will have an estimated enterprise value of $45 billion, firmly solidifying VICI's position as the largest experiential net lease REIT while also advancing VICI's strategic goals of portfolio enhancement and diversification.

Under the terms of the Master Transaction Agreement, MGP Class A shareholders will receive 1.366 shares of newly issued VICI stock in exchange for each Class A share of MGP. The fixed exchange ratio represents an agreed upon price of $43.00 per share of MGP Class A shares based on VICI's trailing 5-day volume weighted average price of $31.47 as of July 30, 2021 and represents a 15.9% premium to MGP's closing stock price on August 3, 2021. MGM Resorts will receive $43.00 per unit in cash for the redemption of the majority of its MGP Operating Partnership units ("OP Units") that it holds for total cash consideration of approximately $4.4 billion and will also retain approximately 12 million units in a newly formed operating partnership of VICI Properties. The MGP Class B share that is held by MGM Resorts will be cancelled and cease to exist.

Simultaneous with the closing of the transaction, VICI Properties will enter into an amended and restated triple-net master lease with MGM Resorts. The lease will have an initial total annual rent of $860.0 million, inclusive of MGP's pending acquisition of MGM Springfield, and an initial term of 25 years, with three 10-year tenant renewal options. Rent under the amended and restated master lease will escalate at a rate of 2.0% per annum for the first 10 years and thereafter at the greater of 2.0% per annum or the consumer price index ("CPI"), subject to a 3.0% cap. Additionally, VICI will retain MGP's existing 50.1% ownership stake in the joint venture with Blackstone Real Estate Income Trust, Inc. ("BREIT JV"), which owns the real estate assets of MGM Grand Las Vegas and Mandalay Bay. The BREIT JV lease will remain unchanged and provides for current annual base rent of approximately $298 million and an initial term of 30 years, with two 10-year tenant renewal options. Rent under the BREIT JV lease escalates at a rate of 2.0% per annum for the first 15 years and thereafter at the greater of 2.0% per annum or CPI, subject to a 3.0% cap. On a combined basis, the MGM master lease and BREIT JV lease will deliver initial attributable rent to VICI of approximately $1.0 billion.

The transaction was approved by the Board of Directors of each of MGM Resorts, MGP and VICI Properties (and, in the case of MGP, the Conflicts Committee). The parties expect the transaction to close in the first half of 2022, subject to customary closing conditions, regulatory approvals and approval by the stockholders of VICI Properties. The VICI Properties Board of Directors and management team will remain unchanged.

Financing

VICI Properties has secured a $9.3 billion financing commitment from Morgan Stanley, J.P. Morgan and Citibank.

Advisors

Morgan Stanley & Co LLC is acting as lead strategic and financial advisor to VICI Properties on the transaction. Citigroup Global Markets Inc. is also acting as financial advisor to VICI Properties. Hogan Lovells US LLP and Kramer Levin Naftalis & Frankel LLP are serving as legal advisors to VICI Properties. Baker Botts LLP is serving as legal advisor to MGP. Evercore is acting as financial advisor and Potter Anderson & Corroon LLP is serving as legal advisor to the Conflicts Committee of the MGP Board of Directors. J.P. Morgan is acting as financial advisor and Weil, Gotshal & Manges LLP is serving as legal advisor to MGM Resorts.

## II. The Prospectus Omits Material Information

23. On September 23, 2021, Defendants filed the materially incomplete and misleading Prospectus with the SEC. The Individual Defendants were obligated to carefully review the

Prospectus before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Prospectus misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

### A. The Misleading Incomplete Financial Projections

24. The Prospectus fails to provide material information concerning financial projections of the Company and MGP relied upon by the Board in recommending the Proposed Merger, and by Morgan Stanley in performing its financial analyses to issue its fairness opinion. The Prospectus discloses management-prepared financial projections for the Company and MGP which are materially misleading. The Prospectus indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed certain financial projections prepared by the management teams of VICI and MGP. Prospectus at 81.

25. First, the Prospectus, omits critical financial projections for the Company and MGP, including the net income projections, and the future dividend per share projections. The Defendants elected to summarize the Company's and MGP's financial projections, but they excised and failed to disclose the net income projections, and the future dividend per share projections utilized in Morgan Stanley's *Dividend Discount Analysis* for VICI and MGP.

26. By disclosing certain projections in the Prospectus and withholding, *inter alia*, the future dividend per share projections and net income projections, Defendants render the projection tables on pages 104, 105 and 108 of the Prospectus materially incomplete and provide a misleading valuation picture of VICI and MGP.

27. Further, with respect to the "VICI Projections" the Prospectus fails to disclose: (i) the line items underlying Total Revenue, Adjusted EBITDA, AFFO, and Unlevered Free Cash

Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Prospectus at 104.

28. With respect to the "VICI Adjusted MGP Projections", the Prospectus fails to disclose: (i) the line items underlying Total Pro Rata Cash Rents, Adjusted EBITDA, AFFO, and Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Prospectus at 105.

29. With respect to the "MGP Projections", the Prospectus fails to disclose: (i) the line items underlying Total Pro Rata Cash Rents, Adjusted EBITDA, and Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Prospectus at 108.

30. With respect to the "MGP Adjusted VICI Projections", the Prospectus fails to disclose: (i) the line items underlying Total Revenue, Adjusted EBITDA, and Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Prospectus at 108.

31. The omission of this information renders the financial projections disclosed by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

32. When a company discloses non-GAAP financial measures in a Prospectus that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33. Courts have recognized that "projections … are probably among the most

highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

34. If a Prospectus discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Morgan Stanley, but have omitted crucial net income projections, future dividend per share projections, line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on pages 104, 105, and 108 of the Prospectus misleading.

B. <u>The Misleadingly Incomplete Summary of Morgan Stanley's Fairness Opinion</u>

35. The Prospectus describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information in citing Morgan Stanley's fairness opinion and the valuation analyses among the "material" factors the Board considered in making its recommendation to VICI shareholders. Prospectus at 71. However, the summary of Morgan Stanley's fairness opinion and analyses provided in the Prospectus fails to include key multiples and inputs and assumptions underlying the analyses. Without this information, as described below, VICI shareholders are unable to fully

understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to VICI shareholders.

36. With respect to Morgan Stanley's *Dividend Discount Analysis* for MGP, the Prospectus fails to disclose: (i) the aggregate implied value of dividends per share that MGP was forecasted to generate from July 1, 2021 through December 31, 2025; (ii) the terminal values per share of MGP Class A common stock utilized in the analysis; and (iii) the inputs and assumptions underlying the applied range of derived costs of equity of 5.9% to 7.9%. Prospectus at 84-85.

37. With respect to Morgan Stanley's *Dividend Discount Analysis* for VICI, the Prospectus fails to disclose: (i) the aggregate implied value of dividends per share that VICI was forecasted to generate from July 1, 2021 through December 31, 2025; (ii) the terminal values per share of VICI common stock utilized in the analysis; and (iii) the inputs and assumptions underlying the applied range of derived costs of equity of 6.7% to 8.7%. Prospectus at 85.

38. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for MGP, the Prospectus fails to disclose: (i) the inputs and assumptions underlying the discount rates range of 5.4% to 6.7%; (ii) MGP's weighted average cost of capital and cost of equity utilized in the analysis; and (iii) MGP's cost of debt. Prospectus at 85-86.

39. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for VICI, the Prospectus fails to disclose: (i) the inputs and assumptions underlying the discount rates range of 5.9% to 7.3%; (ii) VICI's weighted average cost of capital and cost of equity utilized in the analysis; and (iii) VICI's cost of debt. Prospectus at 86-87.

40. These key inputs are material to VICI shareholders, and their omission renders the summary of the *Dividend Discount Analysis* and *Discounted Cash Flow Analysis* incomplete and

misleading. Dividend discount analyses and discounted cash flow analyses grant wide discretion to the banker to choose outcome-determinative metrics such as "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explained regarding discounted cash flow analyses:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

41. In other words, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Without such undisclosed information, VICI shareholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Merger. Full disclosure of the omissions identified above is required in order to ensure that shareholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Merger.

42. Without the above-omitted information, VICI shareholders are misled as to the

reasonableness or reliability of Morgan Stanley's analysis, and are unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Dividend Discount Analysis* and *Discounted Cash Flow Analysis* for VICI and MGP included in the Prospectus misleadingly incomplete.

43. With respect to Morgan Stanley's *Comparable Public Company Analysis*, the Prospectus fails to disclose the individual multiples and metrics observed for the companies selected as comparable to VICI. Prospectus at 83-84.

44. With respect to Morgan Stanley's *Premiums Paid Analysis*, the Prospectus fails to disclose the premiums of each transaction. Prospectus at 87-88.

45. With respect Morgan Stanley's *Research Analyst Price Targets and Nav Targets* analysis, the Prospectus fails to disclose: (i) the identity of the analysts observed; and (ii) the price targets and net asset value estimates utilized. Prospectus at 89.

    C. <u>Material Omissions Concerning Morgan Stanley's Conflicts of Interest</u>

46. The Prospectus fails to disclose material information concerning potential conflicts of interest faced by Morgan Stanley.

47. The Prospectus incorporates Morgan Stanley's fairness opinion by reference, which sets forth that in the thirty months prior to the date of its fairness opinion Morgan Stanley provided financial advisory services to VICI and MGP.

48. The Prospectus fails, however, to disclose the details of the past services that Morgan Stanley has provided to VICI and MGP. The Prospectus also completely fails to disclose that Morgan Stanley owns shares in VICI and critically has purchased over 10,000,000 shares of VICI around the time of its engagement and thereafter, and prior to the issuance of its fairness opinion.

49. Full disclosure of all investment banker potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

50. Without full and fair disclosure of the material information set forth above, VICI shareholders should not be asked to vote on the Proposed Merger.

51. In sum, the omission of the above-referenced information renders the Prospectus materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote on the Proposed Merger and is threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

7. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

8. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

9. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and

in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

10. The omission of information from a prospectus will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

11. Defendants have issued the Prospectus with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Prospectus, which fails to provide critical information regarding, amongst other things: (i) financial projections for VICI and MGP; (ii) valuation analyses performed by Morgan Stanley; and (iii) potential conflicts faced by Morgan Stanley.

12. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Prospectus, but nonetheless failed to obtain and disclose such information to the Company's shareholders, although they could have done so without extraordinary effort.

13. The Individual Defendants knew or were negligent in not knowing that the Prospectus is materially misleading and omits material facts necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the

Proposed Merger; indeed, the Prospectus states that Morgan Stanley reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Morgan Stanley, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Master Transaction Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Prospectus, rendering the sections of the Prospectus identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Morgan Stanley's analyses in connection with their receipt of the fairness opinion, question Morgan Stanley as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Prospectus and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

14. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Prospectus. The preparation of a prospectus by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Prospectus or failing to notice the material omissions in the Prospectus upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Master Transaction Agreement and preparation and review of the Company's financial projections.

15. Vici is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Prospectus.

16. The misrepresentations and omissions in the Prospectus are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

17. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

18. The Individual Defendants acted as controlling persons of VICI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

19. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

20. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

21. In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Master Transaction Agreement. The Prospectus purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

22. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

23. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

24. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them

from proceeding with the Shareholder Vote or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Prospectus;

  B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 20, 2021         **MONTEVERDE & ASSOCIATES PC**

                     */s/ Juan E. Monteverde*
                     Juan E. Monteverde (JM-8169)
                     The Empire State Building
                     350 Fifth Avenue, Suite 4405
                     New York, NY 10118
                     Tel: (212) 971-1341
                     Fax: (212) 202-7880
                     Email: jmonteverde@monteverdelaw.com

                     *Attorneys for Plaintiff*